## J. P. Morgan & Co. *v.* Hall & Lyon Co.

### MAY 14, 1912.

Present:   Dubois, C. J., Johnson, Parkhurst, Sweetland, and Vincent, JJ.

*(1)   Corporations.   Guaranty.   Ultra Vires.*

While a corporation is not ordinarily bound by a contract of guaranty, for the benefit of third parties, such guaranty may be given in the accomplishment of any object for which the corporation was created or when the particular transaction is reasonably necessary or proper in the conduct of its business, and whenever an act may under any circumstances be reasonably necessary, a party dealing with the corporation has the right to assume, without notice to the contrary, that the act is binding upon it.

*(2)   Corporations.   Ultra Vires.   Guaranty.*

Defendant corporation operating a drug store, by its treasurer signed a written guaranty of a letter of credit issued by plaintiffs to X.   There was no evidence to show whether X. was in any way connected with defendant.

*Held,* that there was nothing in the transaction to excite suspicion that the matter was one of accommodation and the fact that the letter of credit was in the name of a woman was not sufficient to put plaintiffs upon inquiry, and plaintiffs were entitled to the presumption that the treasurer was acting within his authority.

*(3)   Contracts.   Consideration.*

Plaintiff undertook to furnish to X. a letter of credit for a certain sum to be drawn by her at such times and in such amounts as she might determine

and defendant guaranteed to pay such amounts to plaintiff as might be drawn upon such letter.

*Held,* that X. having received the amount of the letter of credit the conclusion was inevitable that she received the money by virtue of some arrangement between plaintiff and his correspondents, and there being no failure of consideration defendant was liable under the terms of such guaranty.

ASSUMPSIT.    Heard on exceptions of plaintiff, and sustained.

VINCENT, J.    This is an action at law brought by J. P. Morgan & Company to recover from the defendant corporation damages for breach of its written guaranty of a letter of credit issued by the plaintiffs to Emily Alpers, the guaranty being signed by the defendant corporation by its then treasurer, George C. Lyon.    The guaranty is as follows:

"GUARANTEE.

"LETTER OF CREDIT No. N———NEW YORK, Aug. 19, 1907.

"Whereas, J. P. Morgan & Co. have given to Miss Emily Alpers their Circular Letter of Credit, No. N——— for 200 pounds or Fcs. 5050 we hereby guarantee and agree, on demand, to pay said J. P. Morgan & Co. the amounts drawn against said Letter of Credit, together with usual charges.

"In case this credit be either lost or stolen we hereby authorize J. P. Morgan & Co. to send the usual Circular to their Correspondents, notifying them of the loss, and to take such precautions as they may deem advisable for the prevention of fraud, agreeing to pay any expenses attending the same, and in case of the cashing of any drafts by any banker, under the usual precautions, and before the receipt of any circular, we agree to indemnify J. P. Morgan & Co. for any loss therefrom.

"HALL & LYON Co.,
"GEO. C. LYON, *Treasurer.*"

The letter of credit was issued in August, 1907, and was for 200 pounds, sterling.    Against this letter of credit six

drafts were drawn; three of which drafts are still unpaid,— to wit, one for 17 pounds, one for 54 pounds, and one for 100 pounds. The amount due on this letter of credit in United States money, at the then current rates of exchange, was $845.98, not including interest.

The case was tried in the Superior Court without a jury and a decision was rendered for the defendant, whereupon plaintiffs filed their bill of exceptions upon two grounds, (1) that the said decision was against the law and (2) that said decision was against the evidence, and the weight thereof.

The defendant contends that the Hall & Lyon Company being a trading corporation, the act of its treasurer, in signing the guaranty, was without authority and so simply an act for the accommodation of a third party to whom the letter of credit was issued, and therefore, that it was *ultra vires* as to the defendant corporation, and also that the plaintiff took such guaranty with notice of its character.

The plaintiffs deny both of these propositions and claim (1) that the guaranty was issued by the treasurer of the defendant company under full apparent authority to bind the defendant company; that his act was not *ultra vires*, there being no evidence that such guaranty was for the accommodation of a third party, (2) that the plaintiffs took the guaranty in good faith without notice, actual or constructive, there being nothing surrounding the transaction to suggest inquiry as to the validity or purpose thereof, and (3) that the defendant knew that the guaranty was accepted in good faith and in the belief that it would be recognized and the drafts drawn on the letter of credit would be paid by the defendant, and therefore the defendant became bound to make such payment.

There is nothing in the testimony tending to show whether or not Emily Alpers was in any way or manner connected with the defendant company.

(1)    It is, no doubt, the general rule that a corporation is not ordinarily bound by a contract of guaranty for the benefit of third parties, but that such guaranty may be

given in the accomplishment of any object for which the corporation was created or when the particular transaction is reasonably necessary or proper in the conduct of its business.    *Clark & Marshall, Private Corporations,* § 184– 184 c;  *Thompson on Corporations,* § 2218–2226.

There is also good authority for the position that whenever an act may, under any circumstances, be reasonably necessary to carry out the purposes of incorporation, the party dealing with the corporation has a right to assume, without notice to the contrary, that the act is binding upon it.  *Greene's Bryce's ultra vires,* p. 37 *et seq.* p. 40 a.  The defendant corporation might properly guarantee a letter of credit under some circumstances as, for instance, if it were sending someone abroad to purchase goods and the (2) plaintiffs would have the right to assume, both from previous dealings with the defendant and from lack of notice, that the guaranty was in furtherance of the defendant's legitimate business.  Taking into consideration the well known fact that drug stores keep on hand and offer for sale a large variety of articles which cannot be classified as drugs, and the further fact that women have been employed, in recent years, in a great variety of occupations, including heads of departments, buyers and in many other positions connected with mercantile business, we do not think that the issuance of the letter of credit in the name of a woman would be sufficient to put the plaintiffs upon inquiry.

There was nothing in the transaction which was calculated to excite the suspicion that the letter of credit was a matter of accommodation, and there was no testimony upon that point.  So far as appears, the letter of credit was issued and the guaranty obtained in good faith from an officer of the defendant company having, apparently, the required authority to act as he did.  The plaintiffs had no actual or constructive notice that the letter of credit was to be used for purposes unconnected with the defendant's business.  Under these conditions the plaintiffs would be

entitled to the presumption that in guarantying the letter of credit the treasurer of the defendant company was acting within his authority.

We do not think that there is anything in the case of *Cook* v. *American Tubing & Webbing Company*, 28 R. I. 41, which should restrain the court from finding the defendant liable. In that case certain claims were allowed and certain others disallowed. Claims which bore upon their face the evidence that the transaction was for the accommodation of third parties were disallowed, while others which did not bear such evidence, and were not surrounded by circumstances calculated to arouse suspicion, were allowed. The court said in that case: "We need not consider the question whether the assignment of accounts was a form of security which the general manager was authorized to make. Whether he could do so or not . . . there was nothing in his offer to do so which was calculated to excite the suspicion that the loan was required for any purpose other than the ordinary uses of the webbing company. Whether, if the security had been real, the complainant could hold it, is not now material. The loan was made in good faith to an officer having apparent authority to contract it, the lender had no actual or constructive notice that it was procured with fraudulent intent to appropriate the money lent and we must consider the claim a valid one against the webbing company and its assets in the hands of the receivers."

This language of the court seems to us to cover the case at bar. There was nothing in the transaction which was calculated to excite the suspicion or apprise the plaintiffs that the proceeds of the letter of credit were to be devoted other than for the purposes of the defendant company.

(3)    The defendant contends that there has been no breach of contract by the defendant. That assuming that the contract upon which the suit is brought was a contract within the power of the corporation to make, and within the power of the treasurer of the corporation to make in its behalf, upon the record, there is no liability from the defendant to the plaintiff.

With this contention of the defendant we cannot agree. The defendant in and by its guaranty promised to pay to the plaintiff "the amounts drawn against said letter of credit." Letters of credit only become useful and serviceable to the traveler, through the general credit of the party issuing the same, or through some arrangement made with bankers within the territory to be traversed. In the case before us it is admitted that Emily Alpers received upon her letter of credit the full sum for which the same was issued. The conclusion is, therefore, inevitable that she received the money by virtue of some arrangement between the plaintiffs and their correspondents abroad. What those particular arrangements were does not seem to us to be important in the present controversy.

The plaintiffs undertook to furnish to Emily Alpers a letter of credit for a certain amount of money to be drawn by her at such times and in such amounts as she might determine, and this undertaking the plaintiffs performed. Under these conditions the defendant guaranteed to pay such amounts to the plaintiffs as might be drawn upon said letter. The consideration for the guaranty was to make available to Emily Alpers the sum of money expressed in the letter, and inasmuch as there has been no failure of consideration, we cannot see why the defendant should not pay the balance due to the plaintiffs in accordance with its agreement.

The plaintiffs' exceptions are sustained and an opportunity will be given to the defendant to appear and show cause, on June 3, 1912, at ten A. M., why judgment for the plaintiffs in the sum of $845.98, with interest, should not be entered.

*Dexter B. Potter, Edward A. Stockwell,* for plaintiff.
*C. M. Van Slyck, Frederick A. Jones,* for defendant.